IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EARL WILLIAMS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:12-cv-00392-HEA |
| ) | |
| BANK OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO REOPEN CASE**

**I.   INTRODUCTION**

On February 11, 2014, the parties to this action reached a settlement at mediation, the terms of which were set out in a Memorandum of Understanding. Given the settlement, Plaintiffs' depositions set for the following week were cancelled by defendant Bank of America, N.A. ("Bank of America" or "Defendant") and responses to Bank of America's pending discovery requests directed to plaintiffs became unnecessary. Shortly after the mediation, plaintiffs Earl Williams and Carol Williams (collectively, "Plaintiffs") apparently experienced the equivalent of "buyer's remorse" about the settlement to which they agreed. Within two days of the mediation, Plaintiffs began making allegations that misrepresentation and fraud had occurred at the mediation. Plaintiffs have failed to comply with the terms of the settlement and now ask the Court to re-open the case that they voluntarily dismissed. Worse still, in their post-mediation Court submissions, Plaintiffs make baseless accusations and grossly misrepresent the facts.

Plaintiffs have displayed a blatant disrespect for the judicial process, including court-ordered mediation, and they have not complied with the terms of settlement in good faith. On

this basis, Plaintiffs are not entitled to reinstate their case. Nevertheless, because the Memorandum of Understanding contemplates—although under very different circumstances—allowing Plaintiffs to pursue their case in Court, and in the interest of judicial economy, Bank of America does not oppose the re-opening of Plaintiffs' case. Given the current procedural posture and discovery status, however, a new scheduling order with discovery and dispositive motion deadlines will be necessary.

## II.  FACTUAL BACKGROUND

At the Rule 16 Conference on July 2, 2013, the parties agreed that mediation was appropriate in this case. The Court entered an Order referring the case to ADR, according to which the parties were to designate a neutral by January 22, 2014 and complete mediation by March 2, 2014. In accordance with the ADR Order, the parties selected a mediator. Plaintiffs, through their counsel, requested that Lawrence B. Grebel serve as mediator, and Bank of America agreed. The parties also agreed, through counsel, for the mediation to take place at the offices of Bank of America's counsel on February 11, 2014.

### A.  Mediation

The mediation took place on February 11, 2014. Per the mediator's recommendation, there were no joint sessions at the mediation. Defendant's counsel never spoke directly to Plaintiffs at the mediation. After various separate meetings, the mediator advised that the parties had reached an agreement. The agreement contemplated, in part, that Plaintiffs would dismiss their suit without prejudice, to stop imminent discovery and deadlines, and would submit to Bank of America the documents necessary in order for Bank of America to review the home mortgage loan at issue for possible modification.

Counsel for Plaintiffs then met with Defendant's counsel to draft a Memorandum of Understanding. The Memorandum of Understanding states that Plaintiffs were to dismiss their suit without prejudice by Friday, February 14, 2014, before depositions scheduled for the following Monday and Tuesday. (Memorandum of Understanding, attached hereto as Exhibit A). After the Memorandum of Understanding was drafted, Defendant's counsel drafted a Dismissal Without Prejudice. The draft Dismissal Without Prejudice contemplated Plaintiffs' *pro se* submission of the dismissal to the Court, since counsel who represented Plaintiffs at the mediation is not admitted to practice in the United States District Court for the Eastern District of Missouri and could not file it for Plaintiffs. Upon review of the draft Dismissal Without Prejudice, Plaintiffs' counsel requested that Defendant's counsel file the Dismissal with the Court, rather than have Plaintiffs submit it *pro se*. Defendant's counsel then revised the Dismissal Without Prejudice into a Stipulation of Dismissal Without Prejudice, which was to be executed by Plaintiffs—thus indicating their consent—and submitted electronically to the Court by Defendant's counsel. (Stipulation of Dismissal Without Prejudice, attached hereto as Exhibit B).

Defendant's counsel then took five originals of both the Memorandum of Understanding and the Stipulation of Dismissal Without Prejudice to the next-door conference room for Plaintiffs' review and execution, along with two copies of the loan modification packet to be completed for the loan modification review, and gave them to Plaintiffs' counsel. Within minutes, Plaintiffs' counsel returned to Defendant's conference room with the ten original documents signed by Plaintiffs and their counsel. Defendant and Defendant's counsel then executed five originals of both the Memorandum of Understanding and the Stipulation of Dismissal Without Prejudice. Defendant's counsel then gave three originals of each document to

Plaintiffs' counsel, gave one original of each document to the mediator, and kept one original of the fully executed Memorandum of Understanding and one original of the fully executed Stipulation of Dismissal Without Prejudice. In accordance with the agreement, Defendant's counsel electronically submitted the Stipulation of Dismissal Without Prejudice, executed by Plaintiffs, to the Court later that afternoon.

**B.     Post Mediation**

On February 12, 2014, Earl Williams contacted Defendant's counsel by phone. Mr. Williams stated that though he had copies of the loan modification packet, neither he nor Mrs. Williams had any document they signed at the mediation. Defendant's counsel stated that five originals of both the Memorandum of Understanding and the Stipulation of Dismissal Without Prejudice were signed by the parties and counsel at mediation (one copy for the mediator, one for Defendant and Defendant's counsel, one for Plaintiffs' counsel and one for each Plaintiff). Defendant's counsel also stated that she gave three executed originals to Plaintiffs' counsel, so that each Plaintiff and their counsel would each have a copy of both documents, and that service copies of the Stipulation of Dismissal Without Prejudice has been mailed to each Plaintiff. Mr. Williams replied that neither he nor Mrs. Williams had any document they had signed. He stated that he was calling from nearby and asked if he could pick up photocopies of the documents. Defendant's counsel agreed to leave photocopies of the Memorandum of Understanding and the Stipulation of Dismissal Without Prejudice for Mr. Williams at the reception desk of her office.

On February 13, 2014, Carol Williams contacted Defendant's counsel by phone. Mrs. Williams asked for the terms of the loan modification. Defendant's counsel replied that, per the agreement reached at mediation, Plaintiffs were to submit a completed loan modification packet to Defendant's counsel by February 14, 2014, that Bank of America would then review the loan

for modification, and that Defendant's counsel would communicate the results of the loan modification review to Plaintiffs' counsel. Mrs. Williams stated that Plaintiffs were no longer represented by counsel. Mrs. Williams inquired how long the loan modification review would take. Defendant's counsel stated that after the requisite documents are received, the review would likely take between thirty and sixty days. Mrs. Williams then stated that both the mediator and her former counsel had told her that Bank of America had agreed to give Plaintiffs their house for free. Defendant's counsel explained the terms of the settlement and how those terms were reduced to writing in the Memorandum of Understanding. Mrs. Williams accused both her former counsel and the mediator of misrepresentation. Defendant's counsel stated that she would return Mrs. Williams' call later in the day and ended the phone call.

Later that day, Defendant's counsel received phone calls from both Plaintiffs' former counsel and the mediator. Both former counsel and the mediator stated that, at mediation, the terms of the settlement were discussed in depth with Plaintiffs and that no representations were made to Plaintiffs that Bank of America was offering Plaintiffs a free house. Defendant's counsel returned Mrs. Williams' call by leaving a voicemail message stating, in substance, that both the mediator and Plaintiffs' former counsel had stated that the terms of the agreement had been discussed in detail with Plaintiffs, that the agreement was set forth in the Memorandum of Understanding, and that Plaintiffs were required to submit a completed loan modification packet in order for the loan to be reviewed for modification.

On February 14, 2014, Mrs. Williams again contacted Defendant's counsel by phone. Mrs. Williams stated that she would be filing a motion to reinstate her case and she reiterated her belief that she had been deceived at the mediation by both her former counsel and the mediator. Defendant's counsel attempted to convey that Plaintiffs' allegations of misrepresentation and

fraud occurring at mediation were incredible. Defendant's counsel stated, in essence, that Plaintiffs' allegations that the mediator had lied at mediation were particularly unbelievable, especially considering that the mediator is a well-respected attorney who has practiced in St. Louis for over thirty years. The mediator is on the list of neutrals approved by this Court.

During this conversation, Mrs. Williams also asked why the Stipulation of Dismissal was filed before February 14, 2014. Defendant's counsel explained that the Memorandum of Understanding contemplates February 14, 2014 as the outside date of submission of the Stipulation of Dismissal and that it could be submitted before that date. Defendant's counsel further explained that while this provision of the Memorandum of Understanding was originally drafted in order to give Plaintiffs sufficient time to go to Court to file the Stipulation of Dismissal, Plaintiffs' former counsel subsequently had asked Defendant's counsel to electronically submit the Stipulation of Dismissal to the Court, and Defendant's counsel had agreed to Plaintiffs' counsel's request. Mrs. Williams insisted that she had been deceived and stated that she would be filing complaints with the Missouri bar against both her former counsel and Defendant's counsel, in addition to submitting her motion to the Court.

### C. Plaintiffs' Post-Mediation Court Filings

On February 14, 2014, Plaintiffs filed a Motion Not to Dismiss Out Case and for the Memorandum of Understanding to be Dismissed or Voided, which, like Plaintiffs' Motion to Reopen Case, consists of an illogical diatribe containing both wild speculation and complete fabrication. On February 18, 2014, the Court denied Plaintiffs' Motion Not to Dismiss as moot.

Undeterred, on February 19, 2014, Plaintiffs filed their Motion to Reopen Case ("Motion"). Plaintiffs' Motion relies on baseless speculation—Plaintiffs even allege that the mediator "had something under his jacket, not sure what it was, but there was a bulged [sic] in

6

his jacket," and assert "I want the mediator investigated because someone committed fraud." (Motion, pp. 2-3). As described in more detail below, Plaintiffs' allegations are not based in reality.

### III. ARGUMENT

Though not denominated as such, Plaintiffs' Motion appears intended to be a motion under Fed. R. Civ. P. 60(b)(1) and 60(b)(3), since Plaintiffs seek relief from the dismissal of their suit and make allegations of fraud and mistake. In essence, Plaintiffs allege that their former counsel, Defendant's counsel "and possibly [the mediator] conspired to deceive us into signing the dismissal." (Motion, p. 2). Bank of America and its counsel strenuously object to any allegation or implication of fraud or misrepresentation on their part. Despite the clear language of the Memorandum Understanding and the fact that they signed the Memorandum of Understanding while represented by counsel, Plaintiffs attempt to convince the Court that the Memorandum of Understanding does not embody the mediated agreement as they understood it.

The Memorandum of Understanding outlines the terms of the agreement reached at mediation: 1) Plaintiffs promptly dismiss their suit without prejudice, to stop the ongoing litigation and deadlines; 2) Plaintiffs submit a completed loan modification packet; 3) Bank of America considers the loan for possible modification; and 4) upon receipt of a loan modification with terms suitable to Plaintiffs, Bank of America would pay Plaintiffs $10,000 in exchange for Plaintiffs dismissing their suit with prejudice. In the event that the loan did not qualify for modification or that the terms of a modification offered by Bank of America were not acceptable to Plaintiffs, Bank of America would not pay Plaintiffs and Plaintiffs could go back to Court.

Despite these clear terms to which Plaintiffs agreed—which they indicated by signing the Memorandum of Understanding—Plaintiffs now assert that these are not the terms of the

7

agreement. Rather, Plaintiffs assert that they were deceived into thinking that they would know the terms of the loan modification *before* they even submitted a significant number of documents to the Bank for review. This is simply not credible. The Memorandum of Understanding states that Plaintiffs will submit documents to the Bank for loan modification review, and the loan modification packet was provided to Plaintiffs at the mediation. The documents in the loan modification packet are necessary in order for the Bank to review the loan and the current financial condition of Plaintiffs in order to determine whether a loan modification is possible and if so, what the terms of a modification would be. According to their own pleadings, Plaintiffs have applied for loan modifications on more than one occasion in the past, so they are familiar with the loan modification process. Further, in 2012, Plaintiffs applied for a loan modification with Bank of America, by completing the loan modification packet and submitting it to Defendant's counsel. Thus based on both language of the Memorandum of Understanding and Plaintiffs' own personal experience with the loan modification process, it is unreasonable for Plaintiffs to now assert that they thought they would be given the terms of a guaranteed loan modification before they submitted the requisite documents to the Bank.

Plaintiffs' allegations regarding the submission of the Stipulation of Dismissal are similarly unavailing. Sentence one of the Memorandum of Understanding states that Plaintiffs will dismiss their suit by February 14, 2014. Sentence two states that Plaintiffs will submit all the documents and information required for Bank of America to review the loan for modification. Sentence three states that Bank of America will review the loan for modification upon receipt of the requisite documents from Plaintiffs. Based on the terms of the agreement, Bank of America was under no obligation to review the loan for modification *unless* Plaintiffs submitted documents and *unless* Plaintiffs dismissed their suit without prejudice. Plaintiffs'

assertion that Bank of America was required to disclose the terms of a loan modification *before* they submitted documents and *before* they dismissed their suit is baseless.

As described above, the Memorandum of Understanding was drafted before the Stipulation of Dismissal. The Memorandum contemplated that Plaintiffs would submit a Dismissal Without Prejudice and was drafted to give Plaintiffs sufficient time to go to Court to do so. Plaintiffs' counsel at the mediation then asked Defendant's counsel to submit the dismissal to the Court, and the Dismissal Without Prejudice was revised into a Stipulation of Dismissal Without Prejudice, which included a signature block for each Plaintiff and Defendant's counsel. Plaintiffs signed the Stipulation of Dismissal—thereby indicating their consent—and Defendant's counsel filed the Stipulation of Dismissal as agreed. Plaintiffs' claim that they did not consent to the submission of the Dismissal is belied by their execution of both the Stipulation of Dismissal and the Memorandum of Understanding, which contemplates the Dismissal being filed as the first step of the agreement.

Plaintiffs are not entitled to re-open their case for the reasons they assert in their Motion. Nevertheless, Bank of America does not oppose the re-opening of Plaintiffs' case as long as Bank of America is not prejudiced by its cancellation of Plaintiffs' depositions and the passage of other deadlines that occurred in reliance on the dismissal. The Memorandum of Understanding contemplated Plaintiffs being able to proceed in Court, in the event that they did not consider acceptable the terms of any loan modification offered by Bank of America. Since the agreement reached at mediation envisioned the possibility of Plaintiffs proceeding in Court at some subsequent juncture, Bank of America is not opposed to this suit proceeding in this Court before the assigned judge. In the event that the Court chooses to exercise its discretion and re-

open this case, Bank of America asks the Court to amend the prior scheduling order in order to allow the parties sufficient time to complete discovery and submit dispositive motions.

## IV.    CONCLUSION

Though Plaintiffs' Motion to Reopen Case strains credulity with its multiple misrepresentations, unfounded assumptions and selective references to the Memorandum of Understanding, and though Plaintiffs have failed to comply with the terms of the agreement reached at mediation, because the agreement contemplated a scenario in which Plaintiffs could continue with their case before the Court, Bank of America does not oppose the re-opening of Plaintiffs' case with a new scheduling order in place. In the event that the Court re-opens Plaintiffs' case, Defendants ask the Court to enter an amended scheduling order that provides sufficient time to complete discovery and file dispositive motions.

Respectfully submitted,

BRYAN CAVE LLP

By: /s/Michele R. Gardner
    Kevin Abel, #39568
    Michele Gardner, #59838
    One Metropolitan Square
    211 North Broadway, Suite 3600
    St. Louis, MO 63102
    (314) 259-2000
    (314) 259-2020 (facsimile)

*Attorneys for Defendant Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2014, the foregoing was served via first class mail on the following:

Earl Williams
13145 Old Jamestown
Florissant, MO 63033

Carol Williams
13145 Old Jamestown
Florissant, MO 63033

*/s/ Michele R. Gardner*